In case it appears on the face of the bill or complaint that the plaintiff has an adequate remedy at law, the objection may be raised by demurrer; but in the cases referred to the defendants answered, and failed to raise the objection in their answers. It is not held in these cases that the defense that there is an adequate legal remedy may not be raised by demurrer when the defect appears on the face of the complaint or bill.

PARKER, J., concurs.

---

(83 Hun, 438.)

BELL v. SMITH et al.

(Supreme Court, General Term, Fifth Department. December 27, 1894.)

CONTRACTS—VALIDITY—COMPETENCY OF PARTIES.

The mere fact that a man is old and feeble, and of less active mind than in his younger days, does not render him incompetent to manage his own affairs.

Appeal from special term, Yates county.

Action by Charles Bell, as committee of Morgan Smith, against Eberle E. Smith and another, to cancel a discharge of a bond and mortgage. There was a judgment in favor of defendants, and plaintiff appeals. Affirmed.

The opinion of Mr. Justice RUMSEY at special term is as follows:

This is one of those unfortunate litigations which not infrequently arise between children of very old people, who are anxious to divide the property without waiting for the death of their parents. The facts, which are entirely undisputed, are that Morgan Smith and his wife were the parents of one Josephine Pulver and of Eberle E. Smith, the defendant. Mr. Morgan Smith was about 81 years old, and his wife was some years older. For some time the two had been living at the house of Mrs. Pulver, and had received from her such care and attention as was satisfactory to them. Mr. Morgan Smith was the owner of about $5,400 of personal property, including the bond and mortgage in question, which, with interest, amounted on the 9th day of June to about $2,700. Shortly before the 9th of June, 1892, there had been some sort of a settlement between Pulver and Morgan Smith, and Mr. Smith had learned that Pulver intended to charge him what he believed to be an exorbitant price for the board and lodging which he and his wife received, and he found that Pulver claimed that Smith was then indebted to him in the sum of about $1,800 for board already had. It appeared that he was exceedingly dissatisfied with this condition of affairs. There is no doubt that at this time Pulver and Mrs. Pulver both supposed that he was perfectly competent to do business. He knew how much he had, and they evidently supposed that he was in a fit mental condition to settle their account, and to pay them the sum of $1,800, or thereabouts, for the board which he had had up to that time. It is clear that he was then sufficiently able to do business to appreciate the fact that his fortune was not enough to enable him to pay for his board at the rate at which he was then charged, and to understand that common prudence required that he should make some other arrangements with regard to his support, lest the fortune which he had would not be sufficient to provide for him and his wife during their life. At this time he went to the house of his son, Eberle, the defendant. Eberle it seems, was a well to do farmer, who lived upon the farm which Morgan Smith had occupied for many years. Morgan Smith and his wife had some sort of a life estate in that farm, or in a portion of it. Eberle Smith and his wife had given to Morgan Smith a bond to secure the payment of $2,500, secured by a mortgage upon the farm on which he lived. Upon this bond there was due something over one year's interest.

While Morgan Smith was at his son's house, an agreement was made between them, by which Morgan Smith discharged and satisfied the bond and mortgage, and Eberle Smith and his wife agreed to give to Morgan Smith and his wife a home at their house, and to clothe and care for them, during their life, and, in case Morgan Smith and his wife desired to live elsewhere, to pay $300 a year during during the life of Morgan Smith, and $150 a year to Mrs. Smith in case she survived her husband. This action is brought to set aside and cancel this discharge, and the sole question is whether or not Morgan Smith, at the time he made this paper, was of sound mind, and competent to make a contract of this kind, or whether he had become, by reason of his age, incompetent to make such a contract.

It may be premised that such a contract is not unusual. Whatever may be thought of the expediency of such a contract generally, it cannot be said to have been an inexpedient contract to make in this instance. Eberle Smith was an only son. He was, so far as appears, on the best possible terms with his father, and there is nothing to show that there had ever been any difficulty or unkindness between them. Mr. Smith, his father, had, as he supposed, grave reason to be displeased with the conduct of Pulver towards him. Of his whole fortune at that time almost $2,000 had already been absorbed by the charges which Pulver made, and which, it seems, he had not supposed would be so large. These charges would reduce his estate from $5,400 down to about $3,600, and it is quite clear that the interest on that $3,600 would not be sufficient to pay the bill which Pulver had advised him he intended to charge, being $7 a week for the board and lodging of the two. It was apparent that at this rate he would be obliged each year to break into his capital seriously, and that the small fortune which he possessed would be soon exhausted. In that state of affairs, it surely cannot be said to be unreasonable that he desired to make some other arrangement for his support, and the arrangement which he did make, by which he provided for the maintenance of himself and his wife, including their clothing and all their expenses, at the house of his only son, at a cost of the interest on a $2,500 mortgage, was a very profitable bargain. It is noticeable that he procured by this bargain what Pulver had been charging him seven dollars a week for. Was he, then, competent at this time to make this bargain? The question is not whether he was competent on the 23d of August to make this bargain, but whether he was competent to make it on the 9th of June. It may be conceded that, because the relation of father and son existed between Morgan Smith and Eberle, the presumption is that the bargain was not a valid one (Boyd v. De La Montagnie, 73 N. Y. 498), and that the defendant is bound by the burden of the proof to overturn this presumption. As we have seen, the transaction was not an unreasonable one in itself. The evidence shows that at the time it was made Morgan Smith consulted with his brother, a business man, in whom he had great confidence. The brother says that at this time Morgan understood what property he had, and produced it, and counted it, and it was figured up. He spoke of the debt to Pulver, from which it appears that he was perfectly cognizant of what was owing in that place. It appears that he talked over the terms of this contract with his brother, and advised the brother what he wanted put into it, and after the contract was written he read it over, and appreciated the contents, and said it was all right. It appears that he suggested the agreement himself, and gave as reasons that his expense at Pulver's was too much, and that he wanted to secure a home while he had something to do it with. When the amount of money to be paid in case he left Eberle's house was spoken of, he said he wanted it made large enough to secure to himself and his wife a home. He knew, at that time, that he had no debts, except the debt to Pulver, and he knew its amount. That testimony shows that at the time he made this contract he was in the full possession of his faculties, quite as much so as any man of his age could be expected to be. It appears from the testimony of the defendants' witnesses that while he was there at Eberle's and afterwards, even down to the time when this inquisition was had, he was intelligent and bright, and that there was no serious failure of his mental faculties. These persons tell of interviews with him, in which he talked of his business, and showed a clear appreciation of his financial condition. It appears that in August, 1892, when

Mrs. Pulver was taking him from Eberle's to her home, he met Judge Strouble, with whom he had a conversation, and that he at that time had a clear recollection of things that had occurred, and was bright and intelligent. The evidence of other witnesses who saw him from time to time when he was at Eberle's shows that he recollected his friends, he knew their ages and conditions, he knew their families, and inquired about them, and talked with visitors intelligently upon the usual topics of the day. It is very clear that he knew all about his own family, and that he had an exceedingly clear appreciation of his financial condition, and was perfectly aware what he wanted to accomplish by this bargain. The evidence of the plaintiff's witnesses shows that he was a feeble old man; and undoubtedly he was not as bright or intelligent, nor was his mind as active, as in his younger days. But it is not expected that a man of his age will retain his faculties to their full perfection. The law does not require that to make him competent to do business. A man is perfectly competent to do business if he has a clear appreciation of the particular business in which he is engaged, of the relation it bears to his fortune, of the expediency or inexpediency of it, and if he is able to judge rationally as to the reasonableness of the particular transaction. All this Morgan Smith was able to do. In addition to this, he knew clearly all about his own family, and the necessities of his financial condition; and he had sound reasons, which he gave, for making the bargain which he did. It would be very serious if the law should say that whenever the faculties of a man began to fail because of his age it should be reason sufficient for taking from him the right to control his property. The power of such control is of great use to many old men, to insure to them proper and courteous treatment from their families. It has been the experience of many lawyers that, so soon as a man became old and infirm, he ceased to receive from his children that respect and care which, in his prime, he was enabled to command; and that, but for the hopes of the favors which they might obtain from him, he would be left to charity for that care which his age and necessities demanded. Because of that, it was said by Chancellor Kent that the law would go a great way in assuring to old men the right to manage their fortunes, although their bodies and their minds might have become enfeebled with age. But, without laying any stress upon these considerations, it is sufficient to say that upon the testimony this man thoroughly understood the bargain which he made with his son; that it was a reasonable bargain to make; that it assured him a comfortable home or sufficient maintenance if he thought fit to go elsewhere; and that he was possessed of sufficient mind to enable him to make it.

Argued before DWIGHT, P. J., and LEWIS, HAIGHT, and BRADLEY, JJ.

M. A. Leary, for appellant.
W. T. Morris and John Gillette, for respondent.

PER CURIAM. Judgment appealed from affirmed, with costs, on the opinion of RUMSEY, J., at special term.

---

(82 Hun, 220.)

WINSLOW v. CARTHAGE, W. & S. H. R. CO. et al.

In re UPHAM, County Treasurer.

(Supreme Court, General Term, Fourth Department. December 7, 1894.)

MORTGAGES—FORECLOSURE—COMPENSATION OF TRUSTEE.
Where defendant, in an action to foreclose a trust mortgage, paid the amount of the mortgage debt to the county treasurer, and the court held that such payment was a sufficient tender, and dismissed the complaint on the merits, it is improper for the treasurer, before he is authorized by an order to pay over the fund, and before an adjudication has been made discharging the lien of the trustees on the fund, to move for an order "ad-